# UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

Charles A. Foster
PO Box 21284
White Hall,AR 71612

**VS**

Dr. Mark T Esper
  Secretary,
Department of the Army
101 Army Pentagon
Washington, DC 20310-0101

Case: 1:18-cv-00737   **JURY DEMAND**
Assigned To : Mehta, Amit P.
Assign. Date : 3/29/2018
Description: Employ. Discrim.  **(H–DECK)**

Petition No. 0320180011

MSPB No. DA-0752-16-0416-I1

## <u>COMPLAINT</u>

1) Wrongfully terminated from Federal service 6 June 2016
2) Falsely removed from Chemical Personnel Reliability Program (CPRP) 14 Sep 2015
3) Illegally placed on Administrative Leave 4 April 2016
4) Denied the opportunity to attend Explosive Destruction System (EDS) refresher training 22 Sep 2015

MAR 2 2 2018

Plaintiff is requesting a trial by jury

As relief, plaintiff is requesting reinstatement into CPRP after completing annual physical, SF 50 reflecting removal from Federal government and updated as if I was still employed as of 6 June 2016, 30 days of annual leave, 30 days of sick leave, GS 13 step 10 or 2.5 million dollars after taxes and honorably retire.

Charles A. Foster
PO Box 21284
White Hall,AR 71612

14                                                        0320180011

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Charles A. Foster
PO Box 21284
White Hall, AR 71612

Department of the Army
Director, EEO Compliance and Complaints Review, (EEOCCR)
ATTN: SAMR-EO-CCR (Spurgeon A. Moore)
5825 21st Street, Bldg 214, Room 129
Fort Belvoir, VA 22060-5921

William D. Spencer
Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419

**FEB 2 7 2018**
Date

Compliance and Control Division



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Charles A. Foster, a/k/a
Kennith M.,[1]
Petitioner,

v.

Dr. Mark T. Esper,
Secretary,
Department of the Army,
Agency.

Petition No. 0320180011

MSPB No. DA-0752-16-0416-I1

## DECISION

On November 4, 2017, Petitioner filed a timely petition with the Equal Employment Opportunity Commission (EEOC or Commission) asking for review of a Final Order issued by the Merit Systems Protection Board (MSPB) concerning his claim of discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. For the following reasons, we CONCUR with the MSPB's finding that Petitioner did not establish that the Agency discriminated against him.

## ISSUE PRESENTED

The issue presented is whether the Commission should concur with the MSPB's ultimate finding that the Agency did not discriminate against him on the bases of disability, race (African American), and reprisal for prior protected EEO activity when it removed him from employment.

## BACKGROUND

At the time of events giving rise to this complaint, Petitioner worked as a Engineering Technician (Chemical) (CET) for the Edgewood Chemical Biological Center (ECBC) Directorate of Program Integration at the Agency's Pine Bluff Arsenal in Kansas. According to the position

---

[1] This case has been randomly assigned a pseudonym which will replace Petitioner's name when the decision is published to non-parties and the Commission's website.

0320180011

description, the job involved "a variety of duties in connection with toxic agent monitoring, testing and operation of equipment to produce, handle, and detoxify chemical and biological agents and agent related components." Petitioner's duties included "assembly and maintenance of sampling equipment; setting up permanent monitoring sites; and the operating and calibrating of automatic detectors." They also included the "transportation, set-up, systemization, calibration, maintenance, operation and demobilization" of equipment. The position required Petitioner to maintain certification in the Agency's Chemical Personnel Reliability Program (CPRP).

Army Regulation 50-6, Nuclear and Chemical Weapons and Materiel Chemical Surety (AR 50-6), which governs CPRP certification, requires certifying officials to determine the reliability and suitability of CPRP personnel. It requires CPRP members to "be mentally alert, mentally and emotionally stable, trustworthy, and physically competent, and free of unstable medical conditions." Pursuant to AR 50-6, a significant mental or physical medical condition is disqualifying if it may result in an altered state of consciousness, impaired judgment or concentration, an increased risk of impairment if exposed to chemical agents, an impaired ability to wear personal protective equipment, or the inability to perform the physical requirements of the position.

In October 2012, Petitioner asked the Director of Chemical and Biological Operations (CB Director) to reassign him to a different supervisor. The CB Director, stating that he had seen no evidence of mistreatment, refused Petitioner's request.

On February 11, 2013, Petitioner visited the Agency medical clinic and reported experiencing chest pain, dizziness, and headaches. The Agency's Chief Medical Officer(CMO), who served as the Competent Medical Authority (CMA), put Petitioner on light duty and recommended that the Agency place him on medical restrictions. In a February 12, 2013, letter, Petitioner's physician stated that he was treating Petitioner "for migraine headaches, somatic disorder and chest pains that are stress and work related." He opined that transferring Petitioner to a different supervisor would resolve Petitioner's medical condition.

Petitioner visited a Veterans Affairs psychiatric clinic on February 13, 2013. According to the psychiatrist's Progress Notes, Petitioner complained of headaches, chest pains, and job stress; noted that he had requested a lateral transfer at work; and stated that he went to the clinic because he ' ned that a letter from a physician would encourage his managers to make changes.

Petitioner's cardiologist stated in a March 12, 2013, letter that Petitioner's test results were normal and that his symptoms would improve with a change in supervisors. On March 21 and April 1, 2013, the CB Director, who acted as the Certifying Official, notified Petitioner that he was medically restricted from performing Personnel Reliability Program (PRP) duties.

Petitioner continued to experience symptoms and to request a change in supervisors. He went to the Agency's medical clinic on December 8, 2014. The CMO stated in a Medical Recommendation for PRP Duty that Petitioner reported that he recently had been to a Department

0320180011

of Veterans Affairs (VA) hospital emergency room because of migraine headaches, that he also experienced chest pains and sleeplessness, and that he attributed his symptoms to stress from his supervisors. The CMO recommended that Petitioner be restricted from performing PRP duties. By memorandum dated December 12, 2014, the CB Director notified Petitioner that he was medically restricted from performing those duties.

Petitioner reported to the Agency clinic for his annual medical examination on February 2, 2015. In a February 2, 2015, Medical Recommendation for PRP Duty, the Occupational Health Physician Assistant (PA) stated that Petitioner was taking medications for dizziness and migraine headaches, had a pending cardiology evaluation for occasional chest pain, and reported "a constellation of symptoms which could be related to a previous behavioral health condition." The PA concluded that Petitioner had a condition "that may result in a higher vulnerability to nerve agent exposure," was not cleared to use a respirator or have a commercial driver's license, and "should not work directly supporting chemical activities." He recommended that the Agency place Petitioner on medical restrictions and light duty. The PA also recommended that the restrictions continue until Petitioner submitted updated medical information, "at which time [the clinic] will re-evaluate and make another determination as to his ability to perform his duties." The CB Director approved the medical restrictions.

In a February 6, 2015, Medical Recommendation for PRP Duty, the CMO stated that Petitioner "no longer meets the functional requirements of his job and is therefore temporar[ily] disqualified." By memorandum dated February 9, 2015, the CB Director notified Petitioner that he was suspended from the CPRP because of potentially disqualifying information (PDI) received from the CMA. The CB Director extended the suspension on August 7, 2015.

Petitioner went to the Agency clinic on August 24, 2015. According to a Medical Recommendation for PRP Duty, he complained of insomnia, headaches, and dizziness and stated that "he continues to see his behavioral health specialist for ongoing issues and most recently in the" emergency room. The PA spoke with Petitioner the next day. In a Medical Recommendation for PRP Duty, the PA stated that he asked Petitioner to "sign a medical release IOT to obtain his medical records for his encounters at LR VA from the periods of Feb 2013 to current."[2] He also stated that Petitioner refused to sign the release and that he gave Petitioner until September 15, 2015, to provide documentation for consideration in the CMA's final

---

[2] Petitioner has not alleged that the Agency's request for all of his medical records over a two-and-one-half-year period constituted an impermissible disability-related inquiry or medical examination, and we make no finding on this issue. We remind the Agency, however, that all disability-related inquiries and medical examinations of employees must be job-related and consistent with business necessity. 29 C.F.R. § 16390.14.(c). Thus, "in most situations, an employer cannot request an employee's complete medical records because they are likely to contain information unrelated to whether the employee can perform his/her essential functions or work without posing a direct threat." EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA), EEOC Notice 915.002, at Question 13 (July 27, 2000).

4                                    0320180011

recommendation. The PA recommended that Petitioner's medical restrictions continue, and the CB Director concurred. On September 7, 2015, the CB Director again extended Petitioner's CPRP suspension.

In a September 4, 2015, Confirmation of Request for Reasonable Accommodation form, Petitioner asked the Agency to transfer him to different supervisors. He stated that he had experienced migraine headaches, chest pains, dizziness, and sleeplessness since 2012 and that he and his physicians believed that his condition would improve with a change in supervisors.

On September 11, 2015, the CB Director asked Petitioner to provide medical documentation that explained the nature, severity, and duration of his impairment; the activities that the impairment limited; the extent of the limitation; and why he required the accommodation that he requested. Petitioner replied on September 14, 2015, and stated that he had submitted 55 pages of medical information. The submissions included the February 12 and March 12, 2013, doctors' letters as well as an April 6, 2013, "Office Note" in which a psychologist stated that Petitioner "described a constellation of depressive and anxiety-related symptoms" and that his symptoms were stress related and "consistent with a mental health diagnosis of Adjustment Disorder, mixed."

The submissions also included a September 4, 2015, cardiologist's note stating that Petitioner's February 2015 test results were "normal" but that Petitioner had experienced chest pains and dizziness for the past seven months. The cardiologist stated that Petitioner's "[s]ymptoms are most likely related to an anxiety disorder, which has slowly improved over the last several months with close monitoring." He noted that medications had caused side-effects requiring Petitioner to be placed on light duty and that he previously had recommended that Petitioner not wear a gas mask or personal protective equipment (PPE). The cardiologist stated that, "[p]er [Petitioner's] request," he had determined that the restrictions on the use of the gas mask and PPE could be lifted and that Petitioner no longer needed light duty. He recommended that the Agency assign Petitioner to different supervisors.

In addition, Petitioner submitted an August 21, 2015, note in which the VA psychiatrist stated that she had evaluated Petitioner for work-related stress. In Progress Notes, the psychiatrist wrote that she had seen Petitioner once in 2013. She also wrote that Petitioner had received a statement from his cardiologist recommending a transfer, that he hoped to receive another statement from a mental-health professional, that his "key symptom" was insomnia, and that he had no "current or past psychiatric disorders."

Petitioner sent a September 15, 2015, e-mail to the CB Director and the Disability Program Manager asking about the status of his reasonable-accommodation request and whether they needed additional information. The Disability Program Manager replied on September 17 that Petitioner had submitted "a myriad of documents" and that the April 6, 2013, psychologist's note was the last document to mention a diagnosis. Noting that Petitioner's current physician might have updated information, she asked Petitioner to provide "a recent note."

In the meantime, in a September 14, 2015, Medical Recommendation for PRP Duty, the PA recommended that Petitioner be permanently disqualified from the CPRP. He wrote that Petitioner "has a psychological/medical condition and symptoms are reportedly worsened under current supervisor. To return him to his current position/supervisor could worsen his symptoms and be detrimental to his mental health." The PA stated that Petitioner's medical condition disqualified him under Agency policy AR 50-6 CH 2-6(a).

By memorandum dated September 16, 2015, the CB Director notified Petitioner that the Agency had begun action to disqualify Petitioner from the CPRP. The memorandum stated that the Agency was taking the action "due to medical conditions as documented in [Petitioner's] medical records."

In a September 23, 2015, response, Petitioner asserted that his "medical condition was due to stress that [he] experienced as a direct result of working under the supervision of" his second-level supervisor (S1). He noted that he had asked to be removed from S1's supervision. Petitioner also noted that he competed against S1 for a GS-14 position in 2010, that he filed an EEO complaint challenging S1's selection, and that he and the Agency settled the complaint. He alleged that S1 retaliated against him because of his EEO complaint.

By memorandum dated October 15, 2015, the Reviewing Official notified Petitioner that he approved Petitioner's disqualification from the CPRP. He stated that he had reviewed the September 16, 2015, memorandum and had discussed the matter with the Certifying Official.

Also on October 15, 2015, an individual who conducted a command inquiry into Petitioner's allegations of harassment submitted a memorandum finding that Petitioner's managers had not harassed him. Noting the "extensive medical documentation from numerous physicians" supporting Petitioner's claims of stress, the individual recommended that the Agency reassign Petitioner to a different supervisor.

On November 6, 2015, the CB Director denied Petitioner's request for reasonable accommodation. He stated that a request for a change in supervisors is not a request for reasonable accommodation. He also stated that Petitioner's request was not necessary because the Agency had transferred Petitioner to new supervisors on October 26, 2015. In addition, the CB Director stated that, on September 4, 2015, Petitioner's physician said that Petitioner's symptoms had improved and removed Petitioner's light-duty restrictions.

The Agency began a search for other positions for Petitioner. On January 30, 2016, an employee in the Civilian Personnel Advisory Center asked Petitioner to send her a copy of his resume. On February 22, 2016, the Chief of the PB Field Technology Branch asked Petitioner for a list of the geographic locations where he would accept a position.

By memorandum dated April 4, 2016, the Chief of the PB Field Technology Branch proposed to remove Petitioner from his position for failure to maintain a condition of employment. The Branch Chief stated that Petitioner's position description required Petitioner to be certified under

the CPRP, as governed by AR 50-6. He recited the history of Petitioner's medical restrictions and noted that the CMA recommended and the Reviewing Official approved Petitioner's permanent disqualification from the CPRP.

The Branch Chief stated that he conducted a search for a position that did not require CPRP membership. According to the Branch Chief, Petitioner did not respond to the Agency's request for a list of places to which he would be willing to relocate. The Branch Chief stated that the Agency would continue to search for a suitable position "through the advance notice period."

Petitioner submitted a response on April 12, 2016. He asserted that his physicians had cleared him to return to CPRP duties on September 4, 2015, but Agency officials had prevented him from doing so. He also asserted that he "never was diagnosed with a psychological/medical condition," that he asked Agency doctors to encourage management to reassign him to new managers because of the stressful environment, and that the Agency transferred him to new supervisors in October 2015 following a command inquiry. Petitioner argued that the Agency erroneously removed him from the CPRP.

On May 20, 2016, the CB Director sustained the proposed removal and removed Petitioner from his position effective June 6, 2016. The CB Director stated that Petitioner's lack of CPRP certification affected the Agency's mission and resulted in other employees having to perform additional work. According to the CB Director, the Agency searched for but did not find an open position within ECBC that did not require CPRP membership and for which Petitioner was qualified.

*MSPB Decision*

Petitioner filed a mixed-case appeal with the MSPB alleging that the Agency discriminated against him on the bases of race and disability and in reprisal for prior EEO activity when it removed him from employment. On September 1, 2017, after a hearing, an MSPB Administrative Judge (AJ) issued an initial decision affirming the removal and finding no discrimination.

The MSPB AJ found that the Agency established that Petitioner did not maintain a condition of employment. He determined that CPRP certification was a requirement of Petitioner's position and that the evidence established that Petitioner's health conditions disqualified him from participation in the CPRP. In that regard, the MSPB AJ cited testimony that Petitioner's symptoms could result in a lack of concentration, a need to remove protective equipment, or a fall that could tear Petitioner's protective suit and expose him to chemical agents. He also cited CMO's testimony that Petitioner's work-related stress and difficulties with his supervisors raised concerns about whether Petitioner would use chemical materials intentionally.[3]

---

[3] CMO testified that the ability to get along with coworkers and supervisors was "very, very important." He claimed that, if "[t]he person [were] stressing out about the supervisor . . . [a]nd they were mad at the supervisor, they can easily drop the bomb or drop the agent and cause harm

0320180011

The MSPB AJ gave more weight to the medical opinions of the Agency's medical officers, who received training on the CPRP requirements, than he did to the September 4, 2015, note from Petitioner's cardiologist. He stated that there was no evidence that the cardiologist had reviewed Petitioner's position description or the CPRP requirements and that the note, which indicated that Petitioner no longer needed light duty, did not clearly indicate that Petitioner could return to CPRP duties. He also stated that, although the evidence of record does not establish that Petitioner "was ever definitely diagnosed with a mental health condition," it does establish that Petitioner had "health conditions which were disqualifying." The MSPB AJ found that Petitioner's "inability to provide medical documents that showed he had resolved, treated, or was properly managing his medical symptoms was sufficient to justify [Petitioner's] disqualification from the CPRP program."

In finding no discrimination on the basis of race or reprisal, the MSPB AJ relied upon the MSPB's decision in Savage v. Department of the Army, 122 M.S.P.R. 612 (2015). In Savage, the MSPB, among other things, determined that the analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), was not applicable to its proceedings. Savage, 122 M.S.P.R. at 637. In rejecting the McDonnell Douglas framework, the MSPB maintained that the MSPB's authority to adjudicate and remedy alleged violations of 42 U.S.C. § 2000e-16 is a matter of civil service law. Id.

The MSPB AJ found that Petitioner did not show that the Agency treated a similarly-situated employee of a different race more favorably than it treated him. He noted that the Agency permanently disqualified three African-American employees and three White employees from the CPRP program and removed all of them from employment. He concluded that employees who lacked commercial driver's licenses or who had been convicted of driving under the influence were not similarly-situated to Petitioner because their misconduct was not comparable to Petitioner's medical conditions.

With respect to Petitioner's claim of reprisal, the MSPB AJ found that Petitioner did not establish a nexus between his prior EEO activity and the action at issue. He pointed out that Petitioner, who stated that he filed prior EEO complaints, presented no specific evidence concerning the complaints. Further, noting that the "EEO activity occurred many years before the alleged action in dispute here," the MSPB AJ concluded that the timing of the action was insufficient to create an inference of reprisal. Petitioner offered no evidence beyond conjecture that the Agency retaliated against him. Accordingly, the MSPB AJ found that Petitioner did not establish that the Agency removed him because of his prior EEO activity.

---

to the others and kill a lot of people easily." He also claimed that employees with untreated psychiatric impairments could "destroy the equipment, . . . drop the bomb [and] kill a lot of people, . . . [or] come to work and shoot up their workplace." In addition, noting that CETs operate on a buddy system, CMO testified, "If your buddy is working with agents, and you have a chest pain and you pass out, or have [a] migraine, you're not able to assist them, that puts the life of your coworker in danger [and is] likely to cause a mistake."

In finding no disability-based discrimination, the MSPB AJ concluded that Petitioner was an individual with a disability within the meaning of the Rehabilitation Act. He also concluded, however, that Petitioner was not a qualified individual with a disability because Petitioner "did not articulate a reasonable accommodation that would have allowed him to perform the essential functions of his position and did not identify a vacant funded position to which he could have been reassigned." The MSPB AJ noted that changing an employee's supervisor is not a required form of reasonable accommodation and that Petitioner did not identify any change in supervisory methods that would have been an effective accommodation. He further noted that the Agency searched for, but did not find, a vacant position to which it could have reassigned Petitioner.

The MSPB AJ determined that, even if Petitioner were a qualified individual with a disability, he did not show that the Agency discriminated against him on the basis of disability. Petitioner presented no direct evidence of discrimination and no evidence that the Agency retained other employees after their disqualification from the CPRP program. Although Petitioner argued that the Agency allowed other employees with disqualifying conditions to return to CPRP duties, the MSPS AJ found that "these employees were able to resolve their conditions so they were no longer medically disqualifying."[4]

On October 6, 2017, the MSPB AJ's initial decision became the MSPB's final decision. Petitioner then filed the instant petition.

## ARGUMENTS IN PETITION

In his petitioner, Petitioner argues that the Agency discriminated and retaliated against him when it removed him from employment. He asserts that he was never diagnosed with a mental illness, that management officials never referred him for a mental-health examination, and that he asked to see the VA psychiatrist because he wanted her assistance in obtaining a transfer to new supervisors. According to Petitioner, the August 21, 2015, visit with the psychiatrist "was based off one of the disagreements" he had with S1. Petitioner further asserts that he "passed all the required stations" for CPRP certification during his February 2, 2015, annual medical examination. He states that the "last station" of the examination was the discussion where he told CMO that he believed that work-related stress caused his migraine headaches, chest pains, and insomnia. In addition, Petitioner argues that his cardiologist's September 4, 2015, note returned him to full duty and that he never received a diagnosis or prognosis that warranted his permanent removal from the CPRP. He contends that his medical condition never posed a threat to himself or others during "real world chemical missions from March 2006" through December 2014.

The Agency argues that it had legitimate, nondiscriminatory reasons for removing Petitioner from employment and that Petitioner did not prove that the articulated reasons were a pretext for

---

[4] The MSPB AJ also found that Petitioner presented no statistical evidence to support his claims that the Agency's disciplinary decisions had a disability-based disparate impact. Petitioner does not address the disparate-impact theory of discrimination in his petition.

discrimination.  The Agency contends that Petitioner's "dizziness, migraines, and other symptoms were disqualifying and posed a serious safety risk because they could result in a lack of concentration, a sudden need to remove his chemical protective suit, or a loss of balance that could result in a fall."  According to the Agency, Petitioner's symptoms, "and the lack of any credible medical evidence showing they were being treated or were under control" led to his removal from the CPRP program.  In addition, the Agency argues that Petitioner did not show that it treated a similarly-situated employee more favorably than it treated Petitioner.  The Agency further argues that Petitioner was not a qualified individual with a disability, that he did not establish that the Agency discriminated against him on the basis of disability, and that he did not prove that the Agency subjected him to reprisal.

## STANDARD OF REVIEW

EEOC regulations provide that the Commission has jurisdiction over mixed case appeals on which the MSPB has issued a decision that makes determinations on allegations of discrimination. 29 C.F.R. § 1614.303 et seq.  The Commission must determine whether the decision of the MSPB with respect to the allegation of discrimination constitutes a correct interpretation of any applicable law, rule, regulation or policy directive, and is supported by the evidence in the record as a whole.  29 C.F.R. § 1614.305(c).

## ANALYSIS AND FINDINGS

*Disability and Reasonable Accommodation*

Under the Commission's regulations, a federal agency may not discriminate against a qualified individual on the basis of disability and is required to make reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability unless the Agency can show that reasonable accommodation would cause an undue hardship.  See 29 C.F.R. § 1630.2(o), (p).    To establish that he was denied a reasonable accommodation, Petitioner must show that:  (1) he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) he is a "qualified" individual with a disability pursuant to 29 C.F.R. § 1630.2(m); and (3) the Agency failed to provide him with a reasonable accommodation.  See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, EEOC Notice No. 915.002 (Oct. 17, 2002) (Enforcement Guidance on Reasonable Accommodation).  An individual with a disability is "qualified" if he or she satisfies the requisite skill, experience, education, and other job-related requirements of the employment position that the individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position.  29 C.F.R. § 1630.2(m).

An employer may have a requirement that an individual not pose a direct threat to the health or safety of the individual or others in the workplace.  29 C.F.R. § 1630.15(b)(2).  A "direct threat" is a significant risk of substantial harm that cannot be eliminated or reduced by reasonable accommodation.  Id. § 1630.2(r)(1998).  Direct-threat determinations must be based on an

0320180011

individualized assessment of the individual's present ability to perform the essential functions of the job safely. Id.

We assume for purposes of analysis only, and without so finding, that Petitioner is an individual with a disability. For the reasons explained below, we find that Petitioner is not a qualified individual with a disability.

The record establishes that CPRP certification was a requirement of Petitioner's CET position. Petitioner argues that he met the requirements for CPRP certification during his February 2015 annual examination, but the record does not support his argument. Petitioner acknowledges that he experienced migraine headaches, chest pains, and insomnia. Although his cardiologist stated in September 2015 that Petitioner no longer needed light duty, he also stated that Petitioner had experienced dizziness and chest pains for the past seven months. The evidence establishes that Petitioner's symptoms could result in a lack of concentration, a need to remove protective equipment, a fall that could tear Petitioner's protective suit and expose him to chemical agents, and an inability to assist a coworker. Petitioner's symptoms, which were ongoing and could result in substantial harm to Petitioner or others, disqualified him from the CPRP program.

Petitioner asked the Agency to accommodate him by transferring him to different supervisors. An employer, however, does not have to provide an employee with a new supervisor as a form of reasonable accommodation. Enforcement Guidance on Reasonable Accommodation at Question 33. Accordingly, the Agency was not required to grant Petitioner's request for a new supervisor. Thus, to the extent that Petitioner is arguing that his symptoms would have abated and he would have retained CPRP certification if the Agency had granted his requests for new supervisors, his argument is not persuasive.

Reasonable accommodation includes reassignment to a vacant position. 29 C.F.R. § 1630.2(o)(2)(ii). In general, reassignment is the reasonable accommodation of last resort and should be considered only when (1) there are no effective accommodations that would enable an employee to perform the essential functions of his or her current position or (2) accommodating the employee in the current position would cause an undue hardship. 29 C.F.R. pt. 1630 app. § 1630.2(n); Enforcement Guidance on Reasonable Accommodation, "Reassignment." An agency should reassign the employee to a vacant position that is equivalent in terms of pay, status, and other related factors; if there are no vacant equivalent positions, then the agency should reassign the employee to a lower-level position that is closest to the current position. Id.

In this case, the record establishes that the Agency searched for, but did not find, a vacant position for which Petitioner was qualified. Petitioner has not refuted the Agency's assertion that he did not respond to the Agency's request for a list of places to which he would be willing to relocate. Accordingly, we find that the Agency did not unlawfully fail to provide Petitioner with a reasonable accommodation.

Having carefully reviewed the evidence of record, and in light of Petitioner's specific symptoms and the specific duties and requirements of his CET position, we find that Petitioner was not a

11                                                                    0320180011

qualified individual with a disability. He could not perform the essential functions of his CET position safely, and he has not identified a reasonable accommodation that would have allowed him to do so. We emphasize that we base our conclusion on persuasive evidence that Petitioner's migraine headaches, chest pains, dizziness, and insomnia could result in a lack of concentration, a need to remove protective equipment, a fall, and an inability to assist a coworker. We give no weight to CMO's bare, unsupported speculation that Petitioner might "drop the bomb" or "shoot up [the] workplace."

*Disparate Treatment*

In Petitioner's case, we find that the MSPB AJ erred by not applying the analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), when deciding Petitioner's claims of discrimination based on race and reprisal. We will analyze this case according to the McDonnell Douglas paradigm. We find, however, that the MSPB AJ correctly determined that Petitioner did not establish that the Agency discriminated against him as alleged.

To prevail in a disparate-treatment claim. Petitioner must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Petitioner must initially establish a prima facie case by demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Construction Co. v. Waters, 438 U.S. 567, 576 (1978). Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 411 U.S. at 802 n.13. The burden then shifts to the Agency to articulate a legitimate, nondiscriminatory reason for its actions. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). To ultimately prevail, Petitioner must prove, by a preponderance of the evidence, that the Agency's explanation is pretextual. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993). Petitioner can do this by showing that the proffered explanations are unworthy of credence or that a discriminatory reason more likely motivated the Agency. Burdine, 450 U.S. at 256. A showing that the employer's articulated reasons are not credible permits, but does not compel, a finding of discrimination. Hicks at 511.

This established order of analysis in discrimination cases, in which the first step normally consists of determining the existence of a prima facie case, need not be followed in all cases. Where the agency has articulated a legitimate, nondiscriminatory reason for the personnel action at issue, the factual inquiry can proceed directly to the third step of the McDonnell Douglas analysis, the ultimate issue of whether Petitioner has shown by a preponderance of the evidence that the agency's actions were motivated by discrimination. See U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-714 (1983); Hernandez v. Dep't of Transp., EEOC Request No. 05900159 (June 28, 1990); Peterson v. Dep't of Health and Human Servs., EEOC Request No. 05900467 (June 8, 1990); Washington v. Dep't of the Navy, EEOC Petition No. 03900056 (May 31, 1990).

12                                                    0320180011

In this case, the Agency articulated legitimate, nondiscriminatory reasons for its actions. The Agency disqualified Petitioner from the CPRP program because his symptoms could cause a lack of concentration, a need to remove protective equipment, a fall, and an inability to assist a coworker. It removed Petitioner from employment because his CET position required CPRP certification and there was no vacant position that did not require CPRP and for which Petitioner was qualified.

Petitioner has not established that the Agency's reasons are pretextual. He has not shown that the Agency's explanation is unworthy of credence. For example, Petitioner has not shown that other CETs experienced symptoms similar to his for as long as he did but were not disqualified from the CPRP program. Similarly, he has not shown that the Agency permitted employees without CPRP certification to remain in CET positions. Further, Petitioner has not established that a discriminatory reason more likely motivated the Agency. He alleges that the Agency disqualified and removed him because of his race and because he filed an EEO complaint challenging his non-selection for the position awarded to S1, but he has not presented persuasive evidence of unlawful motivation. His bare allegations, without more, are insufficient to establish pretext.

## CONCLUSION

Based upon a thorough review of the record, it is the decision of the Commission to CONCUR with the final decision of the MSPB finding no discrimination. For the reasons set forth herein, we conclude that the evidence in the record as a whole supports the MSPB's finding that Petitioner did not establish the affirmative defense of unlawful discrimination.

## PETITIONER'S RIGHT TO FILE A CIVIL ACTION (W0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court, based on the decision of the Merit Systems Protection Board, **within thirty (30) calendar days** of the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The

13                                                                    0320180011

court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

**FEB 2 7 2018**
Date



# UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

Charles A. Foster
10310 Milkyway
Little Rock, AR 72209

<div style="float:right">

Case: 1:18–cv–00737   **JURY DEMAND**
Assigned To : Mehta, Amit P.
Assign. Date : 3/29/2018
Description: Employ. Discrim.  **(H–DECK)**

</div>

VS

Dr. Mark T Esper
  Secretary,
Department of the Army
101 Army Pentagon
Washington, DC 20310-0101

Petition No. 0320180011

MSPB No. DA-0752-16-0416-I1

## COMPLAINT

1) Wrongfully terminated from Federal government 6 June 2016
2) Permanently removed from Chemical Personnel Reliability Program (CPRP) 14 Sep 2015
3) Erroneously placed on Administrative Leave 4 April 2016
4) Denied the opportunity to attend Explosive Destruction System (EDS) refresher training 22 Sep 2015


RECEIVED
Mail Room

MAR 29 2018

D. Caesar, Clerk of Court
District of Columbia

Plaintiff is requesting a trial by jury

As relief, plaintiff is requesting reinstatement into CPRP after completing annual physical, SF 50 reflecting removal from Federal government and updated as if I was still employed as of 6 June 2016, 30 days of annual leave, 30 days of sick leave, GS 13 step 10 or 2.5 million dollars after taxes and honorably retire.

Charles A. Foster
10310 Milkyway
Little Rock, AR 72209